IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 7, 2010 Session

IN RE MICHAEL C. S. & MAKANZIE A. M. S.

Appeal from the Juvenile Court for Cocke County
Nos. DC 0805, DC 0806      John A. Bell, Judge

No. E2009-00971-COA-R3-PT - FILED OCTOBER 19, 2010

This is a termination of parental rights case. The Department of Children's Services
concedes that it did not prove the grounds for termination of parental rights by clear and
convincing evidence. We likewise find that procedural errors were committed by the trial
court. Accordingly, the trial court's decision is vacated.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Vacated; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS,
P.J. and CHARLES D. SUSANO, JR., J., joined.

Cynthia J. King, Newport, Tennessee, for the appellant, Edward C. S., III.

Robert E. Cooper, Jr., Attorney General & Reporter; Michael E. Moore, Solicitor General;
and Elizabeth C. Driver, Senior Counsel, Nashville, Tennessee, for the appellee, State of
Tennessee, Department of Children's Services.

J. Derreck Whitson, Newport, Tennessee, Guardian ad Litem.

OPINION

I. BACKGROUND

The children at issue, Michael C. S. (d.o.b. 4/25/03) and Makanzie A. M. S. (d.o.b.
11/27/05) ("the Children"), along with three half-siblings, entered the custody of the
Tennessee Department of Children's Services ("DCS") on June 11, 2007. Domestic violence

was alleged and the Children were found to be living in deplorable conditions with their mother.[1] An investigator noted that "[t]he conditions of the home inside and out were unsafe and unsanitary and the children's welfare was in immediate danger."

A judge sitting by interchange entered the initial protective custody order after finding probable cause that the children were dependent and neglected. A team meeting was held two weeks later and permanency plans ("Plans") were developed for each child. Father's responsibilities were listed as follows: (1) obtain and maintain a safe and stable home with no safety hazards and adequate space for a minimum of three months; (2) provide adequate supervision of the Children at all times; (3) participate in a mental health assessment to address any identified needs, schedule the assessment by July 2, 2007, and sign releases for DCS to obtain information from the assessment; (4) participate in a parenting assessment and cooperate with homemaker services, and follow all recommendations; and (5) ensure that the Children attend school regularly, and utilize available community resources, if needed. The responsibilities were the same in both Plans. Father was present for the development of the Plans but refused to sign until his attorney reviewed it. He did sign the form indicating that he had received the Criteria and Procedures for Termination of Parental Rights. It is unclear whether the initial Plans were ever ratified by the trial court.

At a hearing on August 30, 2007, the trial court dismissed the dependency and neglect petition as to Father, finding it devoid of clear and convincing evidence. On that same day, however, DCS filed a new petition based upon allegations by the Children that Father had sexually abused them. A new protective custody order was entered.

The adjudicatory hearing on the sexual abuse allegations was held on September 27, 2007, and was taken under advisement by the trial court. After nearly eight months had passed with no judgment, DCS filed a motion to ascertain status on May 22, 2008. On July 31, 2008, an order was finally entered, in which the trial court held that there was no clear and convincing evidence that the Children had been sexually abused. However, the court ruled the Children were dependent and neglected ("Upon the other evidence as contained in the record and testimony as presented, statements of counsel and the record the (sic) as a whole there is clear and convincing evidence established to show that the children are dependent and neglected within the meaning of the law[.]"). A third set of Plans immediately was ratified.[2] The no contact order was not specifically lifted. No attorney for Father was

---

[1]The mother of the Children is the biological mother to all five children who were residing in the home. Her parental rights are not at issue in this appeal.

[2]The trial court noted in this order that the parents have "moved out-of-state and have not kept in
(continued...)

present during the day's events.[3]

On September 17, 2008, DCS petitioned to terminate the parental rights of Father to the Children. The grounds alleged were abandonment, substantial non-compliance with the Plans, and persistent conditions. By this time, Father had left Tennessee, and DCS was unable to locate him to serve him with the petition. In December 2008, the trial court ordered that Father be served by publication.

The trial took place on March 12, 2009. Father's adult son ("Son") appeared at the hearing on Father's behalf. He reported that Father was in Indiana, ill with pancreatitis. Son presented a note from an Indiana physician that reflected the medical professional's opinion that Father should not travel long distances.[4] However, the trial court refused to acknowledge the validity of the doctor's note. Son also presented a "power of attorney" document to the trial court in an effort to "stand in" for Father. In regard to Son, the court never made any inquiries about whether or not Father was represented by counsel, or was indigent and needed appointed counsel. The court allowed Son to sit at bar for the hearing but did not obtain a waiver of counsel from him. Son was not given the opportunity to cross-examine the state's witness on behalf of Father. He was not allowed to put on proof why Father's rights should not be terminated.[5] The trial court never offered to continue Father's

---

[2](...continued)
touch with the children or the Department" and "[n]one of the parents are in substantial compliance and none of them are here today, nor have they kept in touch with their attorneys in past months."

[3]Father's prior attorney, Scott Justice, was identified in the Certificate of Service.

[4]DCS entered the entire trial court file as an exhibit. The letter had been filed with the trial court prior to the termination hearing and is properly in the record before this court.

[5]The trial court allowed Son to make the following statement:

My father fought for three of his oldest kids when we were beaten in a basement. No food. No water. My father took a beating to his head. You can shave his head and see all the scars.

My father gives a care about his children, and his rights should not be terminated. Because all them accusations they've been made up were proven not to be founded guilty.

You know, my father is a good father; and my father rode on a motorcycle from Louisiana in the middle of winter to come up there and save his children. When he tried so, so hard to save his children from us being almost killed in the State of Indiana.

(continued...)

case.

At the conclusion of the hearing, the trial court ruled as follows:

> Court: Okay. I do find by clear and convincing evidence that [Father has] abandoned [his] children by failure to visit with [his] children. In fact, the testimony was that there has been no visitations, at all.
>
> I find further that [he has] abandoned [his] children by failure to support those children. And the testimony was there has been no support, at all.
>
> [He has] abandoned [his] children by failure to establish a suitable home for the children.
>
> As to compliance with the permanency plan, . . . [he] took [no] . . . efforts to substantially comply with the permanency plan.
>
> And so, there is substantial noncompliance with the permanency plan by . . . [Father].
>
> I do find that the conditions existed that prevent the return of the children to the home and that it is in the best interests of the children that the parental rights of . . . [Father] be terminated and that the complete custody, control, and guardianship be awarded to The State of Tennessee Department of Children's Services with the right to place the children up for adoption and consent to adoption in loco parentis.

By order entered April 2, 2009, the trial court terminated Father's parental rights on the statutory grounds of abandonment for failure to visit, failure to pay child support, and failure to establish a suitable home; substantial noncompliance with the Plans; and persistent unremedied conditions. A timely notice of appeal was filed.

---

[5](...continued)
My father fought for me, my brother, and my sister; and my father gives a care about his children. You know, the man is trying.

## II.  ISSUES

The issues presented are restated as follows:

A.  Whether the trial court violated Father's due process rights.

B.  Whether this court lacks jurisdiction to consider issues from the previous and separate dependency and neglect case against Father.

C.  Whether the grounds for termination were proven by clear and convincing evidence.


## III.  STANDARD OF REVIEW

As courts in this state have long recognized, a parent has a fundamental right to the care, custody and control of his or her child.  *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-13 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). This right is a fundamental but not absolute right, and the state may interfere with parental rights if there is a compelling state interest.  *Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 1391 (1982); *Nash-Putnam*, 921 S.W.2d at 174-75.

The United States Supreme Court has recognized the unique nature of parental rights termination proceedings, observing that "[f]ew consequences of judicial action are so grave as the severance of natural family ties."  *M.L.B. v. S.L.J.*, 519 U.S. 102, 119, 117 S.Ct. 555, 565 (1996), quoting *Santosky*, 455 U.S. at 787, 102 S.Ct. at 1412 (Rehnquist, J., dissenting). The Court has recognized that "[t]he interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment."  *Id.* (quoting *Santosky*, 455 U.S. at 774, 102 S.Ct. at 1405 (Rehnquist, J., dissenting)).  Accordingly, due process requires the application of stringent standards to insure the protection of the fundamental rights at stake.  *See In re W.B. IV*, Nos., M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *8 (Tenn. Ct. App. M.S., Apr. 29, 2005).

As we noted in *In re W.B.IV*,

> Courts are not authorized to terminate a parent's rights only because the children would be better off with such termination. There must first be a showing that a parent has in essence forfeited his or her rights through conduct the legislature has

determined constitutes sufficient danger of harm to the child to be made a ground for termination. "The federal and state constitutions require the opportunity for an individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away." *In re Swanson*, 2 S.W.3d [180, 188 (Tenn. 1999)].

2005 WL 1021618, at *13.

## IV. DISCUSSION

### A.

Counsel for Father claims that because such serious fundamental rights were at stake, the trial court erred when it refused to appoint counsel and continue Father's case.

According to Father's current counsel, a constructive request for a continuance of the hearing was made upon the submission of the letter from the Indiana physician. Indeed, on March 10, 2009 – two days prior to the hearing – the trial court received and filed a letter dated March 5, 2009, from Dr. John G. Mathis, advising that Father was "not to travel any long distance because of possible need for readmission and surgery." Subsequently, Son informed the court that Father "was sick and was supposed to have surgery" and that he had "been in and out of the hospital." The court requested "medical documentation showing that [Father is] sick and cannot be here." When shown the letter from the physician, the trial court responded as follows: "This letter is not signed by some doctor. It just has some kind of computerized stamp on it."

Father's counsel asserts that considering the unique nature of parental rights termination proceedings, the trial court displayed an unwarranted suspicion of the doctor's letter and acted punitively towards Father by not accepting the letter at its face value. Counsel contends it is reasonable to assume that a doctor's office would delegate to a staff member the task of writing such a letter and that a stamp of the physician's signature would be authorized for use by the staff. Counsel observes that if Father had been properly represented at the hearing, the attorney would have argued as to the authenticity of the letter and would have requested the grant of a continuance.

Counsel further argues that Father clearly wanted to be heard at the termination hearing – as evidenced by the presence of Son as his agent and the submission of the letter

from his doctor. As noted by counsel, Father was actively involved in this case at the onset. He was present and participated in the case from the beginning, including attendance at the team meeting, both preliminary hearings, and the adjudicatory hearing.

Counsel also contends that the trial court failed to advise the agent,[6] Son, of Father's right to counsel and then failed to appoint counsel at the termination hearing. The transcript of the hearing is devoid of any attempt by the trial court to address Father's right to counsel or to inquire as to Father's indigence.[7] According to counsel, by failing to inform Son of any of these rights, the trial court deprived Father of his right to counsel. Counsel asserts there is nothing in the record to indicate that Father had ever waived his right to counsel at any stage of the case. The trial court was aware that attorney Scott Justice had previously represented Father, yet made no inquiry as to whether that attorney was still serving as counsel.[8]

The state argues that Son, the individual who appeared at the hearing with an ineffective power of attorney document, was not a party or an agent. Because Father did not appear at the hearing to be advised of his right to counsel and did not request in any other

---

[6]The state asserts that the "power of attorney" document filed with the court does not meet the statutory requirements of the Uniform Durable Power of Attorney Act. *See* Tenn. Code Ann. § 34-6-101 et seq. Tenn. Code Ann. § 34-6-102 defines a durable power of attorney as:

> a power of attorney by which a principal designates another as the principal's attorney in fact in writing and the writing contains the words "This power of attorney shall not be affected by subsequent disability or incapacity of the principal," or "This power of attorney shall become effective upon the disability or incapacity of the principal," or similar words showing the intent of the principal that the authority conferred shall be exercisable, notwithstanding the principal's subsequent disability or incapacity.

According to the state, the document presented by Son is clearly deficient on at least two bases. First, it contains none of the language required by Tenn. Code Ann. § 34-6-102. Second, the notarization clearly states that Son was the person who appeared and executed the document. Thus, the signature of Father is not notarized at all. Accordingly, the state contends that the power of attorney presented by Son is ineffective, and, therefore, Father was not present in court either personally or through his agent.

[7]At a hearing heard on June 12, 2007, Father was appointed an attorney when the judge sitting by interchange "found him to be indigent for the purposes of retaining counsel." On September 21, 2007, the trial court found Father "not to be indigent based on his income without any significant indebtedness." Father had indicated that he had no job, owned no real estate, had no assets, and his income was "$0." Subsequent to the termination proceeding, the trial court appointed counsel to represent Father.

[8]Apparently Father could no longer afford to retain Mr. Justice after the adjudicatory hearing.

manner that counsel be appointed to represent him, the trial court did not err in proceeding with the hearing without appointing counsel for Father. The state further observes that the grant or denial of a continuance lies within the sound discretion of the trial court. Because Father was not present but instead sent Son with an unauthenticated letter from a doctor stating that he was too ill to travel, the state contends the trial court did not abuse its discretion when it refused to continue Father's case. In view of the probable indigence status of Father and the type of the proceeding at issue, we find the state's argument unavailing.

The Tennessee Rules of Juvenile Procedure provide:

> At the beginning of the [termination] hearing, any party who appears without an attorney shall be informed of the right to an attorney, and in the case of an indigent respondent an attorney shall be appointed pursuant to Tennessee Supreme Court Rule 13, unless waived by the party. Any such waiver shall be reflected in the record pursuant to Rule 30 of these rules.

Tenn. R. Juv. P. 39(e)(2). Further, Tennessee has now joined most other states that have declared an indigent respondent in a parental rights termination case, like an indigent defendant in a criminal case, is entitled to the services of a court-appointed attorney. Tenn. R. Sup. Ct. 13, § 1(d)(2)(D). *See In re M.H.*, No. M2005-00117-COA-R3-PT, 2005 WL 3273073, at *7 (Tenn. Ct. App. M.S., Dec. 2, 2005).

We agree with Father's counsel when she asserts the trial court confused the matter when it allowed Son to remain in the courtroom seated at counsel's table, asked that all exhibits presented by DCS be shown to him, and allowed him to make a statement to the trial court. For all practical purposes – without the benefit of counsel – the trial court allowed Son to stand in for Father at the termination proceeding in some capacity. Such was prejudicial to Father's rights. The court should have afforded Father the right to be counted present for the sole purpose of appointing counsel and continuing the case.

**B.**

DCS concedes that there is not clear and convincing evidence in the record to support the termination of Father's parental rights. As a favorable ruling will issue for Father, we pretermit consideration of the other arguments he raised.

## V. CONCLUSION

The order terminating Father's parental rights is vacated and this case is remanded to the trial court for assignment to another judge for all future proceedings. Costs of the appeal are charged to the State of Tennessee.

_____

JOHN W. McCLARTY, JUDGE